# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60800

MURPHY OIL USA, INCORPORATED,

    Petitioner/Cross - Respondent

v.

NATIONAL LABOR RELATIONS BOARD,

    Respondent/Cross - Petitioner

United States Court of Appeals
Fifth Circuit
**FILED**
October 26, 2015
Lyle W. Cayce
Clerk

On Petitions for Review of an Order
of the National Labor Relations Board

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

    The National Labor Relations Board concluded that Murphy Oil USA, Inc., had unlawfully required employees at its Alabama facility to sign an arbitration agreement waiving their right to pursue class and collective actions. Murphy Oil, aware that this circuit had already held to the contrary, used the broad venue rights governing the review of Board orders to file its petition with this circuit. The Board, also aware, moved for en banc review in order to allow arguments that the prior decision should be overturned. Having failed in that motion and having the case instead heard by a three-judge panel, the Board will not be surprised that we adhere, as we must, to our prior ruling. We GRANT Murphy Oil's petition, and hold that the corporation did not

commit unfair labor practices by requiring employees to sign its arbitration agreement or seeking to enforce that agreement in federal district court.

We DENY Murphy Oil's petition insofar as the Board's order directed the corporation to clarify language in its arbitration agreement applicable to employees hired prior to March 2012 to ensure they understand they are not barred from filing charges with the Board.

FACTS AND PROCEDURAL BACKGROUND

Murphy Oil USA, Inc., operates retail gas stations in several states. Sheila Hobson, the charging party, began working for Murphy Oil at its Calera, Alabama facility in November 2008. She signed a "Binding Arbitration Agreement and Waiver of Jury Trial" (the "Arbitration Agreement"). The Arbitration Agreement provides that, "[e]xcluding claims which must, by . . . law, be resolved in other forums, [Murphy Oil] and Individual agree to resolve any and all disputes or claims . . . which relate . . . to Individual's employment . . . by binding arbitration." The Arbitration Agreement further requires employees to waive the right to pursue class or collective claims in an arbitral or judicial forum.

In June 2010, Hobson and three other employees filed a collective action against Murphy Oil in the United States District Court for the Northern District of Alabama alleging violations of the Fair Labor Standards Act ("FLSA"). Murphy Oil moved to dismiss the collective action and compel individual arbitration pursuant to the Arbitration Agreement. The employees opposed the motion, contending that the FLSA prevented enforcement of the Arbitration Agreement because that statute grants a substantive right to collective action that cannot be waived. The employees also argued that the Arbitration Agreement interfered with their right under the National Labor Relations Act ("NLRA") to engage in Section 7 protected concerted activity.

While Murphy Oil's motion to dismiss was pending, Hobson filed an unfair labor charge with the Board in January 2011 based on the claim that the Arbitration Agreement interfered with her Section 7 rights under the NLRA. The General Counsel for the Board issued a complaint and notice of hearing to Murphy Oil in March 2011.

In a separate case of first impression, the Board held in January 2012 that an employer violates Section 8(a)(1) of the NLRA by requiring employees to sign an arbitration agreement waiving their right to pursue class and collective claims in all forums. *D.R. Horton, Inc.*, 357 N.L.R.B. 184 (2012). The Board concluded that such agreements restrict employees' Section 7 right to engage in protected concerted activity in violation of Section 8(a)(1). *Id.* The Board also held that employees could reasonably construe the language in the *D. R. Horton* arbitration agreement to preclude employees from filing an unfair labor practice charge, which also violates Section 8(a)(1). *Id.* at *2, 18.

Following the Board's decision in *D.R. Horton*, Murphy Oil implemented a "Revised Arbitration Agreement" for all employees hired after March 2012. The revision provided that employees were not barred from "participating in proceedings to adjudicate unfair labor practice[] charges before the" Board. Because Hobson and the other employees involved in the Alabama lawsuit were hired before March 2012, the revision did not apply to them.

In September 2012, the Alabama district court stayed the FLSA collective action and compelled the employees to submit their claims to arbitration pursuant to the Arbitration Agreement.[1] One month later, the

---

[1] The employees never submitted their claims to arbitration. In February 2015, the employees moved for reconsideration of the Alabama district court's order compelling arbitration. The district court denied their motion and ordered the employees to show cause why their case should not be dismissed with prejudice for failing to adhere to the court's order compelling arbitration. The district court ultimately dismissed the case with prejudice for "willful disregard" of its instructions in order to "gain[ a] strategic advantage." *Hobson v. Murphy Oil USA, Inc.*, No. CV-10-S-1486-S, 2015 WL 4111661, at *3 (N.D. Ala. July 8, 2015),

General Counsel amended the complaint before the Board stemming from Hobson's charge to allege that Murphy Oil's motion to dismiss and compel arbitration in the Alabama lawsuit violated Section 8(a)(1) of the NLRA.

Meanwhile, the petition for review of the Board's decision in *D.R. Horton* was making its way to this court. In December 2013, we rejected the Board's analysis of arbitration agreements. *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013). We held: (1) the NLRA does not contain a "congressional command overriding" the Federal Arbitration Act ("FAA");[2] and (2) "use of class action procedures . . . is not a substantive right" under Section 7 of the NLRA. *Id.* at 357, 360–62. This holding means an employer does not engage in unfair labor practices by maintaining and enforcing an arbitration agreement prohibiting employee class or collective actions and requiring employment-related claims to be resolved through individual arbitration. *Id.* at 362.

In analyzing the specific arbitration agreement at issue in *D.R. Horton*, however, we held that its language could be "misconstrued" as prohibiting employees from filing an unfair labor practice charge, which would violate Section 8(a)(1). *Id.* at 364. We enforced the Board's order requiring the employer to clarify the agreement. *Id.* The Board petitioned for rehearing en banc, which was denied without a poll in April 2014.

The Board's decision as to Murphy Oil was issued in October 2014, ten months after our initial *D.R. Horton* decision and six months after rehearing was denied. The Board, unpersuaded by our analysis, reaffirmed its *D.R. Horton* decision. It held that Murphy Oil violated Section 8(a)(1) by "requiring

---

*appeal docketed*, No. 15-13507 (11th Cir. Aug. 5, 2015). The employees timely appealed. The case is pending before the Eleventh Circuit.

[2] 9 U.S.C. § 1 *et seq.*

its employees to agree to resolve all employment-related claims through individual arbitration, and by taking steps to enforce the unlawful agreements in [f]ederal district court." The Board also held that both the Arbitration Agreement and Revised Arbitration Agreement were unlawful because employees would reasonably construe them to prohibit filing Board charges.

The Board ordered numerous remedies. Murphy Oil was required to rescind or revise the Arbitration and Revised Arbitration agreements, send notification of the rescission or revision to signatories and to the Alabama district court, post a notice regarding the violation at its facilities, reimburse the employees' attorneys' fees incurred in opposing the company's motion to dismiss and compel arbitration in the Alabama litigation, and file a sworn declaration outlining the steps it had taken to comply with the Board order.

Murphy Oil timely petitioned this court for review of the Board decision.

## DISCUSSION

Board decisions that are "reasonable and supported by substantial evidence on the record considered as a whole" are upheld. *Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 518 (5th Cir. 2007) (citation and quotation marks omitted); *see also* 29 U.S.C. § 160(e). "Substantial evidence is such relevant evidence as a reasonable mind would accept to support a conclusion." *J. Vallery Elec., Inc. v. NLRB*, 337 F.3d 446, 450 (5th Cir. 2003) (citation and quotation marks omitted). This court reviews the Board's legal conclusions *de novo*, but "[w]e will enforce the Board's order if its construction of the statute is reasonably defensible." *Strand Theatre*, 493 F.3d at 518 (citation and quotation marks omitted).

## I. *Statute of Limitations and Collateral Estoppel*

Murphy Oil asserts that Hobson filed her charge too late after the execution of the Arbitration Agreement and the submission of Murphy Oil's motion to compel in the Alabama litigation. By statute, "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). Murphy Oil also contends that the Board is collaterally estopped from considering whether it was lawful to enforce the Arbitration Agreement because the district court had already decided that issue in the Alabama litigation.

Both of these arguments were raised in Murphy Oil's answer to the Board's complaint. They were not, though, discussed in its brief before the Board. "No objection that has not been urged before the Board . . . shall be considered by the court . . . ." 29 U.S.C. § 160(e), (f). Similarly, we have held that "[a]ppellate preservation principles apply equally to petitions for enforcement or review of NLRB decisions." *NLRB v. Catalytic Indus. Maint. Co. (CIMCO)*, 964 F.2d 513, 521 (5th Cir. 1992). While Murphy Oil may have properly pled its statute of limitations and collateral estoppel defenses, it did not sufficiently press those arguments before the Board. Thus, they are waived. *See* 29 U.S.C. § 160(e), (f).

## II. D.R. Horton *and Board Nonacquiescence*

The Board, reaffirming its *D.R. Horton* analysis, held that Murphy Oil violated Section 8(a)(1) of the NLRA by enforcing agreements that "requir[ed] . . . employees to agree to resolve all employment-related claims through individual arbitration." In doing so, of course, the Board disregarded this court's contrary *D.R. Horton* ruling that such arbitration agreements are

enforceable and not unlawful. *D.R. Horton*, 737 F.3d at 362.³ Our decision was issued not quite two years ago; we will not repeat its analysis here. Murphy Oil committed no unfair labor practice by requiring employees to relinquish their right to pursue class or collective claims in all forums by signing the arbitration agreements at issue here. *See id*.

Murphy Oil argues that the Board's explicit "defiance" of *D.R. Horton* warrants issuing a writ or holding the Board in contempt so as to "restrain [it] from continuing its nonacquiescence practice with respect to this [c]ourt's directive." The Board, as far as we know, has not failed to apply our ruling in *D.R. Horton* to the parties in that case. The concern here is the application of *D.R. Horton* to new parties and agreements.

An administrative agency's need to acquiesce to an earlier circuit court decision when deciding similar issues in later cases will be affected by whether the new decision will be reviewed in that same circuit. *See* Samuel Estreicher & Richard L. Revesz, *Nonacquiescence by Federal Administrative Agencies*, 98 YALE L.J. 679, 735–43 (1989). Murphy Oil could have sought review in (1) the circuit where the unfair labor practice allegedly took place, (2) any circuit in which Murphy Oil transacts business, or (3) the United States Court of Appeals for the District of Columbia. 29 U.S.C. § 160(f). The Board may well not know which circuit's law will be applied on a petition for review. We do not celebrate the Board's failure to follow our *D.R. Horton* reasoning, but neither do we condemn its nonacquiescence.

---

³ Several of our sister circuits have either indicated or expressly stated that they would agree with our holding in *D.R. Horton* if faced with the same question: whether an employer's maintenance and enforcement of a class or collective action waiver in an arbitration agreement violates the NLRA. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1336 (11th Cir. 2014), *cert. denied*, 134 S. Ct. 2886 (2014); *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 n.3 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 355 (2014); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053–55 (8th Cir. 2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013).

### III. *The Agreements and NLRA Section 8(a)(1)*

The Board also held that Murphy Oil's enforcement of the Arbitration Agreement and Revised Arbitration Agreement violated Section 8(a)(1) of the NLRA because employees could reasonably believe the contracts precluded the filing of Board charges. Hobson and the other employees involved in the Alabama litigation were subject to the Arbitration Agreement applicable to employees hired before March 2012. The Revised Arbitration Agreement contains language that sought to correct the possible ambiguity.

#### A. *The Arbitration Agreement in Effect Before March 2012*

Section 8(a) of the NLRA makes it unlawful for an employer to commit unfair labor practices. 29 U.S.C. § 158(a). For example, an employer is prohibited from interfering with employees' exercise of their Section 7 rights. *Id.* § 158(a)(1). Under Section 7, employees have the right to self-organize and "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* § 157.

The Board is empowered to prevent unfair labor practices. This power cannot be limited by an agreement between employees and the employer. *See id.* § 160(a). "Wherever private contracts conflict with [the Board's] functions, they . . . must yield or the [NLRA] would be reduced to a futility." *J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944). Accordingly, as we held in *D.R. Horton*, an arbitration agreement violates the NLRA if employees would reasonably construe it as prohibiting filing unfair labor practice charges with the Board. 737 F.3d at 363.

Murphy Oil argues that Hobson's choice to file a charge with the Board proves that the pre-March 2012 Arbitration Agreement did not state or suggest such charges could not be filed. The argument misconstrues the question.

8

"[T]he actual practice of employees is not determinative" of whether an employer has committed an unfair labor practice. *See Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 209 (5th Cir. 2014). The Board has said that the test is whether the employer action is "likely to have a chilling effect" on employees' exercise of their rights. *Id.* (citing *Lafayette Park Hotel*, 326 N.L.R.B. 824, 825 (1998)). The possibility that employees will misunderstand their rights was a reason we upheld the Board's rejection of a similar provision of the arbitration agreement in *D.R. Horton*. We explained that the FAA and NLRA have "equal importance in our review" of employment arbitration contracts. *D.R. Horton*, 737 F.3d. at 357. We held that even though requiring arbitration of class or collective claims in all forums does not "deny a party any statutory right," an agreement reasonably interpreted as prohibiting the filing of unfair labor charges would unlawfully deny employees their rights under the NLRA. *Id.* at 357–58, 363–64.

Murphy Oil's Arbitration Agreement provided that "any and all disputes or claims [employees] may have . . . which relate in any manner . . . to . . . employment" must be resolved by individual arbitration. Signatories further "waive their right to . . . be a party to any group, class or collective action claim in . . . any other forum." The problem is that broad "any claims" language can create "[t]he reasonable impression . . . that an employee is waiving not just [her] trial rights, but [her] administrative rights as well." *D.R. Horton*, 737 F.3d at 363–64 (citing *Bill's Electric, Inc.*, 350 N.L.R.B. 292, 295–96 (2007)).

We do not hold that an express statement must be made that an employee's right to file Board charges remains intact before an employment arbitration agreement is lawful. Such a provision would assist, though, if incompatible or confusing language appears in the contract. *See id.* at 364.

We conclude that the Arbitration Agreement in effect for employees hired before March 2012, including Hobson and the others involved in the

Alabama case, violates the NLRA. The Board's order that Murphy Oil take corrective action as to any employees that remain subject to that version of the contract is valid.

### B. *The Revised Arbitration Agreement in Effect After March 2012*

In March 2012, following the Board's decision in *D.R. Horton*, Murphy Oil added the following clause in the Revised Arbitration Agreement: "[N]othing in this Agreement precludes [employees] . . . from participating in proceedings to adjudicate unfair labor practice[] charges before the [Board]." The Board contends that Murphy Oil's modification is also unlawful because it "leaves intact the entirety of the original Agreement" including employees' waiver of their right "to commence or be a party to any group, class or collective action claim in . . . any other forum." This provision, the Board said, could be reasonably interpreted as prohibiting employees from pursuing an administrative remedy "since such a claim could be construed as having 'commence[d]' a class action in the event that the [Board] decides to seek classwide relief."

We disagree with the Board. Reading the Murphy Oil contract as a whole, it would be unreasonable for an employee to construe the Revised Arbitration Agreement as prohibiting the filing of Board charges when the agreement says the opposite. The other clauses of the agreement do not negate that language. We decline to enforce the Board's order as to the Revised Arbitration Agreement.

### IV. *Murphy Oil's Motion to Dismiss and NLRA Section 8(a)(1)*

Finally, the Board held that Murphy Oil violated Section 8(a)(1) by filing its motion to dismiss and compel arbitration in the Alabama litigation. As noted above, Section 8(a) prohibits employers from engaging in unfair labor

practices. 29 U.S.C. § 158(a). Section 8(a)(1) provides that an employer commits an unfair labor practice by "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise" of their Section 7 rights, including engaging in protected concerted activity. *Id.* §§ 157, 158(a)(1).

The Board said that in filing its dispositive motion and "eight separate court pleadings and related [documents] . . . between September 2010 and February 2012," Murphy Oil "acted with an illegal objective [in] . . . . 'seeking to enforce an unlawful contract provision'" that would chill employees' Section 7 rights, and awarded attorneys' fees and expenses incurred in "opposing the . . . unlawful motion." We disagree and decline to enforce the fees award.

The Board rooted its analysis in part in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983). That decision discussed the balance between an employer's First Amendment right to litigate and an employee's Section 7 right to engage in concerted activity. In that case, a waitress filed a charge with the Board after a restaurant terminated her employment; she believed she was fired because she attempted to organize a union. *Id.* at 733. After the Board's General Counsel issued a complaint, the waitress and several others picketed the restaurant, handing out leaflets and asking customers to boycott eating there. *Id.* In response, the restaurant filed a lawsuit in state court against the demonstrators alleging that they had blocked access to the restaurant, created a threat to public safety, and made libelous statements about the business and its management. *Id.* at 734. The waitress filed a second charge with the Board alleging that the restaurant initiated the civil suit in retaliation for employees' engaging in Section 7 protected concerted activity, which violated Section 8(a)(1) and (4) of the NLRA. *Id.* at 734–35.

The Board held that the restaurant's lawsuit constituted an unfair labor practice because it was filed for the purpose of discouraging employees from seeking relief with the Board. *Id.* at 735–37. The Supreme Court remanded

the case for further consideration, stating: "The right to litigate is an important one," but it can be "used by an employer as a powerful instrument of coercion or retaliation." *Id.* at 740, 744. To be enjoinable, the Court said the lawsuit prosecuted by the employer must (1) be "baseless" or "lack[ing] a reasonable basis in fact or law," and be filed "with the intent of retaliating against an employee for the exercise of rights protected by" Section 7, or (2) have "an objective that is illegal under federal law." *Id.* at 737 n.5, 744, 748.

We start by distinguishing this dispute from that in *Bill Johnson's*. The current controversy began when three Murphy Oil employees filed suit in Alabama. Murphy Oil defended itself against the employees' claims by seeking to enforce the Arbitration Agreement. Murphy Oil was not retaliating as Bill Johnson's may have been. Moreover, the Board's holding is based solely on Murphy Oil's enforcement of an agreement that the Board deemed unlawful because it required employees to individually arbitrate employment-related disputes. Our decision in *D.R. Horton* forecloses that argument in this circuit. 737 F.3d at 362. Though the Board might not need to acquiesce in our decisions, it is a bit bold for it to hold that an employer who followed the reasoning of our *D.R. Horton* decision had no basis in fact or law or an "illegal objective" in doing so. The Board might want to strike a more respectful balance between its views and those of circuit courts reviewing its orders.

Moreover, the timing of Murphy Oil's motion to dismiss when compared to the timing of the *D.R. Horton* decisions counsels against finding a violation of Section 8(a)(1). The relevant timeline of events is as follows:

(1) July 2010: Murphy Oil filed its motion to dismiss and sought to compel arbitration in the Alabama litigation;

(2) January 2012: the Board in *D.R. Horton* held it to be unlawful to require employees to arbitrate employment-related claims individually, and

the D.R. Horton agreement violated the NLRA because it could be reasonably construed as prohibiting the filing of Board charges;

(3) October 2012: the Board's General Counsel amended the complaint against Murphy Oil to allege that Murphy Oil's motion in the Alabama litigation violated Section 8(a)(1); and

(4) December 2013: this court granted D.R. Horton's petition for review of the Board's order and held that agreements requiring individual arbitration of employment-related claims are lawful but that the specific agreement was unlawful because it could be reasonably interpreted as prohibiting the filing of Board charges.

In summary, Murphy Oil's motion was filed a year and a half before the Board had even spoken on the lawfulness of such agreements in light of the NLRA. This court later held that such agreements were generally lawful. Murphy Oil had at least a colorable argument that the Arbitration Agreement was valid when its defensive motion was made, as its response to the lawsuit was not "lack[ing] a reasonable basis in fact or law," and was not filed with an illegal objective under federal law. *See Bill Johnson's*, 461 U.S. at 737 n.5, 744, 748. Murphy Oil's motion to dismiss and compel arbitration did not constitute an unfair labor practice because it was not "baseless." We decline to enforce the Board's order awarding attorneys' fees and expenses.

\* \* \*

The Board's order that Section 8(a)(1) has been violated because an employee would reasonably interpret the Arbitration Agreement in effect for employees hired before March 2012 as prohibiting the filing of an unfair labor practice charge is ENFORCED. Murphy Oil's petition for review of the Board's decision is otherwise GRANTED.